# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>DEMETRICK LEE TELLIS, II,<br><br>  Defendant. | 2:19-cr-00033-JCM-VCF-1<br>**ORDER AND REPORT AND RECOMMENDATION**<br><br>MOTION TO SUPPRESS [ECF NO. 26]; MOTION TO EXTEND [ECF NO. 46] |

Before the Court is Defendant Demetrick Tellis, II's Motion to Suppress (ECF No. 26) and the Government's Motion to Extend Deadline for Response to Defendant's Brief in Support of Motion to Suppress (ECF No. 46). For the reasons discussed below, the Government's motion to extend is granted and Defendant's motion to suppress should be granted.

## BACKGROUND

Defendant is charged with being a felon in possession of ammunition. (ECF No. 12). Defendant now moves to suppress all evidence of the alleged crime seized during his arrest for resisting and obstructing officers, which began when he was allegedly observed walking in a roadway. (ECF No. 26). The facts of the case, as summarized below, are taken from the witness testimony (ECF No. 43) and exhibits (ECF Nos. 40, 41) introduced at a May 15, 2019 evidentiary hearing.

On January 25, 2019 at approximately 11:00 pm, Officer Beckley was driving northeast on Las Vegas Boulevard between Cheyenne and Walnut. (ECF No. 40 at 3, Government Exhibit 2; ECF No. 41 at 8-9, Defense Exhibit M; ECF No. 43 at 16). As she neared Walnut, she saw Defendant walking with a female southwest along Las Vegas Boulevard, towards Officer Beckley, on the side of the road facing

1

1 traffic. (ECF No. 43 at 16-19, 65). Defendant was legally crossing Walnut at its intersection with Las
2 Vegas Boulevard, where no sidewalk is provided. (ECF No. 40 at 3, circled; ECF No. 43 at 19).

3       Officer Beckley knew Defendant by sight. (ECF No. 43 at 70). Once Officer Beckley saw
4 Defendant, before he had done anything wrong or even suspicious, she radioed her sergeant that she "saw
5 Tellis walking on the sidewalk, and … [she] was going to try and make a stop on him." (*Id.* at 69). At
6 the evidentiary hearing, Officer Beckley testified that "[a]ll of us know who Tellis is" because "we know
7 he's committed multiple crimes in our area command." (*Id.* at 70-71). Officer Beckley also stated that
8 any time she would see Defendant she "would conduct surveillance on him" because she thought "[t]hat
9 he could possibly be armed or going to commit a crime." (*Id.* at 72-73).

10       Officer Beckley drove past Defendant and performed two U-turns, looping around Las Vegas
11 Boulevard so that she was once again driving northeast towards Defendant, who had continued to walk
12 southwest. (ECF No. 43 at 65-66). As Officer Beckley drove by the entrance to a parking lot with a Jack
13 in the Box, she allegedly saw Defendant walk in the roadway. (ECF No. 40 at 2, Government Exhibit 1;
14 ECF No. 43 at 45, 66, 85). At the evidentiary hearing, Officer Beckley testified that she saw Defendant
15 take "approximately five steps" in the Las Vegas Boulevard roadway, "and then walked back onto the
16 sidewalk," "right after" walking across a driveway entrance into an apartment complex. (ECF No. 40 at
17 2, circled; ECF No. 43 at 22-23).

18       However, Officer Beckley's testimony was not consistent or credible on this point. Officer
19 Beckley also testified that she saw Defendant step off the sidewalk in the driveway of the apartment
20 complex, where no sidewalk was provided. (ECF No. 43 at 45, 66). Officer Beckley never clarified how
21 or whether Defendant's actions in crossing the apartment complex driveway were separate from his
22 actions in stepping into the roadway. Officer Beckley was also inconsistent regarding whether she
23 considered Defendant's offense to be jaywalking or being a pedestrian in the roadway. (*Id.* at 24-25, 52-
24 53). While Officer Beckley testified that the female walking with Defendant did not step off the sidewalk
25

2

at the same place as Defendant (ECF No. 43 at 26-27), Officer Beckley never mentioned seeing the female cross the apartment complex driveway, which the female must have done to remain walking with Defendant.

The Court notes that Officer Beckley did not have a bodycam at the time of the incident, so there is no footage of the alleged offense. (ECF No. 43 at 29). In addition, Officer Beckley's arrest report fails to include several details of the incident, such as the female walking with Defendant and where Defendant allegedly stepped off the sidewalk. (ECF No. 41 at 8-9). The arrest report does not mention that Officer Beckley knew Defendant by sight. (*Id.*).

Officer Beckley did another series of U-turns to return to the Jack in the Box parking lot. (ECF No. 43 at 67). Officer Beckley attempted to conduct a stop on Defendant, but Defendant ran inside a gas station. (ECF No. 41 at 8-9). After a struggle with officers, Defendant was taken into custody. (*Id.*). Defendant was initially booked for resisting and obstructing officers. (*Id.*). Officer Beckley conducted a search incident to arrest of Defendant's person and backpack and found bullets. (*Id.*). On January 29, 2019, Defendant was arrested by the Federal Bureau of Investigation for unlawful possession of ammunition. (ECF No. 26 at 4).

The parties submitted closing briefs after the evidentiary hearing. (ECF Nos. 45, 48, 49). Defendant argues that Officer Beckley's "admissions at the hearing, coupled with the maps the parties introduced into evidence, make clear Tellis stepped off of the sidewalk along Las Vegas Boulevard and into a driveway of the apartment complex."[1] (ECF No. 45 at 6). Defendant asserts that Officer Beckley's testimony was not credible, and there was no reasonable suspicion or probable cause to believe Defendant committed an unlawful act. (*Id.* at 7-10).[2] In response, the Government argues that Officer Beckley was

---

[1] As discussed below, "stepp[ing] off of the sidewalk…and into a driveway" is not illegal.

[2] Defendant also argues that the stop was unreasonable under *United States v. Grigg*, 498 F.3d 1070 (9th Cir. 2007). (ECF No. 45 at 13). However, *Grigg* took place in the context of an investigatory stop for a misdemeanor that took place outside the officer's presence. 498 F.3d at 1081. Therefore, this case is distinguishable from *Grigg*.

clear and consistent regarding how Defendant unlawfully stepped into the roadway, demonstrating that Officer Beckley had reasonable suspicion to stop Defendant.  (ECF No. 48 at 4, 6-8).

As an initial matter, the Government's motion to extend time to respond to Defendant's post-hearing brief (ECF No. 46) is granted.  The Government asked for a two-day extension and filed its brief one day after the Court's given deadline.  This minimal delay was justifiable and did not prejudice Defendant.  It benefits both the parties and the Court for Defendant's motion to suppress to be judged on its merits as argued by both Defendant and the Government.

**ANALYSIS**

The Fourth Amendment protects the right of people to be secure against unreasonable searches and seizures.  Though the Fourth Amendment does not specifically preclude admission of evidence obtained in violation of its provisions, the courts enforce "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139-40 (2009).  "[T]he government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

"The Fourth Amendment permits brief investigative stops…when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (quoting *United States v. Cortez,* 449 U.S. 411, 417–418 (1981).  If "officers had reasonable suspicion to believe a violation…had occurred, the stop was reasonable under the Fourth Amendment." *United States v. Sanders*, 95 F. Supp. 3d 1274, 1281 (D. Nev. 2015).

From Officer Beckley's testimony, it is clear to the Court that the basis for Defendant's stop was not to enforce statutes regarding pedestrians in the roadway—Officer Beckley's purpose was to stop and search Defendant based on his criminal history.  Officer Beckley testified at the evidentiary hearing that

she knew Defendant by sight and that whenever she saw him, she thought "[t]hat he could possibly be armed or going to commit a crime." (ECF No. 43 at 70-73). Before Defendant had done anything wrong or even suspicious, Officer Beckley radioed her sergeant that she "was going to try and make a stop on [Defendant]." (*Id.* at 69).

Under *Whren v. United States*, 517 U.S. 806 (1996) and its progeny, when the circumstances of a stop, "viewed objectively, are sufficient to justify the detention based on either reasonable suspicion or probable cause that a crime has been committed, the subjective intent of the law enforcement officers is irrelevant." *United States v. Orozco*, 858 F.3d 1204, 1210 (9th Cir. 2017). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.

However, the Court finds that the Government failed to carry its burden to prove that Officer Beckley had a reasonable suspicion that Defendant committed any unlawful act prior to Officer Beckley attempting to stop Defendant. The Court finds that Officer Beckley's testimony regarding the alleged offense is not credible based on her admitted motivation in surveilling and stopping Defendant. Courts have found witnesses to not be credible based on their testimony being evasive, inconsistent, and biased. *See Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*, 864 F.3d 996, 1002 (9th Cir. 2017); *United States v. Abel*, 469 U.S. 45, 45 (1984); *Young Ah Chor v. Dulles*, 270 F.2d 338, 341 (9th Cir. 1959). Each of these concerns mandates an adverse credibility finding against Officer Beckley.

Officer Beckley asserts that she saw Defendant take "approximately five steps" in the Las Vegas Boulevard roadway, "and then walked back onto the sidewalk," "right after" walking across a driveway entrance into an apartment complex. (ECF No. 40 at 2; ECF No. 43 at 22-23). If this testimony were credible, a reasonable suspicion that Defendant violated NRS 484B.297(1) would arise: "where sidewalks are provided, it is unlawful for any pedestrian to walk along and upon an adjacent highway."[3]

---

[3] Defendant made several arguments about a possible obstruction in the sidewalk. (ECF No. 45 at 8). Under and NRS 484B.297(6), a pedestrian "who encounters an obstruction to his or her mobility on the sidewalk…may proceed with due care on the immediately adjacent highway." The Court will not address Defendant's arguments on this issue because the Court

However, Officer Beckley's testimony does not credibly support a finding that she had a reasonable belief that Defendant ever violated NRS 484B.297(1). Officer Beckley was inconsistent, or at the very least unclear, regarding where the alleged offense took place. It could have been either in the driveway entrance to an apartment complex or right next to it. (ECF No. 43 at 22-23, 45, 66). Officer Beckley's confusion regarding whether the offense was jaywalking or being a pedestrian in the roadway (*Id.* at 24-25, 52-53)[4] further indicates that Officer Beckley most likely just saw Defendant crossing the driveway. Crossing the driveway where Defendant did was a legal action under NRS 484B.297(2): "[P]edestrians walking along highways where sidewalks are not provided shall walk on the left side of those highways facing the approaching traffic." Though Officer Beckley testified that the female walking with Defendant did not step off the sidewalk at the same place as Defendant (ECF No. 43 at 26-27), Officer Beckley never mentioned seeing the female cross the apartment complex driveway, which the female must have done to remain walking with Defendant. In addition, Officer Beckley's arrest report fails to mention any female walking with Defendant. (ECF No. 41 at 8-9).

Based on Officer Beckley's inconsistencies during her testimony and in her written report regarding where and how the alleged offense took place and her admitted motivation to "to try and make a stop on [Defendant]" (ECF No. 43 at 69) prior to Defendant doing anything wrong, the Court finds that Officer Beckley's testimony regarding the alleged offense is not credible. The Court finds that Officer Beckley did not have reasonable suspicion that Defendant committed the alleged offense. *See United States v. Evans*, 786 F.3d 779, 789 (9th Cir. 2015) (whether reasonable suspicion exists "depends in part on whether the district court finds the officers' testimony concerning the relevant facts credible, and in part on whether the information the officers had provided reasonable suspicion").

---

finds that the government failed to establish that Officer Beckley had a reasonable suspicion that Defendant unlawfully stepped off the sidewalk into the roadway.

[4] The Government cited NRS 484B.287 in one of its briefs. (ECF No. 32 at 3). Though it may have been a mistaken attempt to cite NRS 484B.297, it is worth noting that NRS 484B.287 refers to pedestrians crossing highways at unmarked crosswalks, which could relate to jaywalking allegations.

Officer Beckley's actions in attempting to stop Defendant were unlawful under the Fourth Amendment. "[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and… 'evidence later discovered and found to be derivative of an illegality.'" *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Therefore, all evidence obtained as a result of Defendant's stop in this case should be suppressed.

Accordingly, and for good cause shown,

IT IS HEREBY ORDERED that the Government's Motion to Extend Deadline for Response to Defendant's Brief in Support of Motion to Suppress (ECF No. 46) is GRANTED.

IT IS HEREBY RECOMMENDED that Defendant's Motion to Suppress (ECF No. 26) be GRANTED.

DATED this 17th day of June, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE