UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:19-CR-33 JCM (VCF) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| DEMETRICK LEE TELLIS II, | |
| Defendant(s). | |

Presently before the court is Magistrate Judge Ferenbach's ("Judge Ferenbach") report and recommendation ("R&R"). (ECF No. 50). The United States of America (the "government") filed an objection (ECF No. 51), to which defendant Demetrick Lee Tellis, II ("defendant") responded (ECF No. 52).

Also before the court is the government's motion for leave to file a reply. (ECF No. 53). Defendant opposed the motion. (ECF No. 55).

Lastly before the court is defendant's motion to suppress. (ECF No. 26). The government filed a response (ECF No. 32), to which defendant replied. (ECF No. 49).

**I.　Facts**

Defendant is charged with being a felon in possession of ammunition. (ECF No. 12). Defendant now moves to suppress all evidence of the alleged crime seized during his arrest for resisting and obstructing officers, which began when he was allegedly observed walking in a roadway. (ECF No. 26).

The facts of the case, as summarized below, are taken from Judge Ferenbach's R&R. *See* (ECF No. 50). Judge Ferenbach discerned the facts from witness testimony (ECF No. 43) and exhibits (ECF Nos. 40, 41) introduced at a May 15, 2019, evidentiary hearing. Where

appropriate, the court will note the parties' objections to the facts as Judge Ferenbach stated them.

On January 25, 2019 at approximately 11:00 pm, Officer Beckley was driving northeast on Las Vegas Boulevard between Cheyenne and Walnut. (ECF No. 40 at 3, Government Exhibit 2; ECF No. 41 at 8–9, Defense Exhibit M; ECF No. 43 at 16). As she neared Walnut, she saw defendant walking with a female southwest along Las Vegas Boulevard, towards Officer Beckley, on the side of the road facing traffic. (ECF No. 43 at 16–19, 65). Defendant was legally crossing Walnut at its intersection with Las Vegas Boulevard, where no sidewalk is provided. (ECF No. 40 at 3, circled; ECF No. 43 at 19).

Officer Beckley knew defendant by sight. (ECF No. 43 at 70). Once Officer Beckley saw defendant, before he had done anything wrong or even suspicious, she radioed her sergeant that she "saw Tellis walking on the sidewalk, and … [she] was going to try and make a stop on him." *Id.* at 69. At the evidentiary hearing, Officer Beckley testified that "[a]ll of us know who Tellis is" because "we know he's committed multiple crimes in our area command." *Id.* at 70–71. Officer Beckley also stated that any time she would see defendant, she "would conduct surveillance on him" because she thought "[t]hat he could possibly be armed or going to commit a crime." *Id.* at 72–73.

Officer Beckley drove past defendant and performed two U-turns, looping around Las Vegas Boulevard so that she was once again driving northeast towards defendant, who had continued to walk southwest. *Id.* at 65–66. As Officer Beckley drove by the entrance to a parking lot with a Jack in the Box, she saw defendant walk in the roadway. (ECF No. 40 at 2, Government Exhibit 1; ECF No. 43 at 45, 66, 85). At the evidentiary hearing, Officer Beckley testified that she saw defendant take "approximately five steps" in the Las Vegas Boulevard roadway, "and then walked back onto the sidewalk," "right after" walking across a driveway entrance into an apartment complex. (ECF No. 40 at 2, circled; ECF No. 43 at 22–23).

James C. Mahan
U.S. District Judge

Judge Ferenbach found that Officer Beckley's testimony was not "consistent or credible on this point."[1] (ECF No. 50 at 2). Judge Ferenbach noted that "Officer Beckley also testified that she saw Defendant step off the sidewalk in the driveway of the apartment complex, where no sidewalk was provided." *Id.* (citing ECF No. 43 at 45, 66). Judge Ferenbach further noted that "Officer Beckley never clarified how or whether [d]efendant's actions in crossing the apartment complex driveway were separate from his actions in stepping into the roadway. Officer Beckley was also inconsistent regarding whether she considered [d]efendant's offense to be jaywalking or being a pedestrian in the roadway." *Id.* (citing ECF No. 43 at 24–25, 52–53).

Moreover, the R&R provides that "[w]hile Officer Beckley testified that the female walking with defendant did not step off the sidewalk at the same place as defendant (ECF No. 43 at 26–27), Officer Beckley never mentioned seeing the female cross the apartment complex driveway, which the female must have done to remain walking with [d]efendant." (ECF No. 50 at 2–3). Finally, Judge Ferenbach points out that "Officer Beckley's arrest report fails to include several details of the incident, such as the female walking with [d]efendant and where [d]efendant allegedly stepped off the sidewalk. *Id.* at 3. "The arrest report does not mention that Officer Beckley knew [d]efendant by sight." *Id.*

After observing defendant allegedly step onto Las Vegas Boulevard, Officer Beckley did another set of U-turns to return to the Jack in the Box parking lot. (ECF No. 43 at 67). Officer Beckley attempted to conduct a stop on defendant, but defendant ran inside a gas station. (ECF No. 41 at 8–9, Defense Exhibit M). After a struggle with officers, defendant was taken into custody. *Id.* Defendant was initially booked for resisting and obstructing officers. *Id.* Officer Beckley searched defendant incident to arrest and found ammunition in his backpack. *Id.* On January 29, 2019, defendant was arrested by the Federal Bureau of Investigation for unlawful possession of ammunition. (ECF No. 26 at 4).

Following the May 15, 2019, evidentiary hearing, the parties submitted closing briefs. (ECF Nos. 45, 48, 49). After considering the evidence and testimony presented at the

---

[1] The government objects to Judge Ferenbach's finding that Officer Beckley's testimony was not consistent or credible. (ECF No. 51).

**James C. Mahan**
**U.S. District Judge**

- 3 -

evidentiary hearing and the parties' closing briefs, Judge Ferenbach found that "it is clear to the [c]ourt that the basis for [d]efendant's stop was not to enforce statutes regarding pedestrians in the roadway—Officer Beckley's purpose was to stop and search [d]efendant based on his criminal history." (ECF No. 50 at 4). Moreover, due to the perceived inconsistencies in Officer Beckley's testimony and the lack of non-testimonial evidence that defendant had committed any offense prior to being stopped, Judge Ferenbach concluded that Officer Beckley lacked reasonable suspicion to stop defendant. (ECF No. 50 at 5). Accordingly, Judge Ferenbach found that the search incident to defendant's arrest violated the Fourth Amendment and recommends that the court suppress all evidence obtained as a result. *Id.* at 7.

**II.     Legal Standard**

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); LR IB 3-2. Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. However, "a district court may not reject the factual findings of a magistrate judge on a motion to suppress without conducting a de novo evidentiary hearing." *United States v. Ridgway*, 300 F.3d 1153, 1155 (citing *United States v. Bergera*, 512 F.2d 391, 392–94 (9th Cir. 1975)).

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen (14) days from the date of service of the findings and recommendations. Similarly, Local Rule 7-2 provides that a party must file an opposition to a motion within fourteen (14) days after service of the motion.

**III.     Discussion**

The subjective intent of law enforcement officers is irrelevant where the circumstances surrounding the investigatory stop objectively satisfy either probable cause or reasonable suspicion. *United States v.* Orozco, 858 F.3d 1204, 1210 (9th Cir. 2017). However, in situations

where the officer's testimony is required to determine whether there was reasonable suspicion, that officer's credibility will necessarily be at issue. *See United States v. Evans*, 786 F.3d 779, 789 (9th Cir. 2015) (holding that a finding of reasonable suspicion "depends in part on whether the district court finds the officers' testimony concerning the relevant facts credible, and in part on whether the information the officers had provided reasonable suspicion"). The Ninth Circuit has provided as follows:

> In judging the credibility of a witness and determining the weight to be given to his testimony, the trier of the fact may consider the witness' demeanor and manner while on the stand, the character of his testimony as being probable or improbable, inconsistencies, patent omissions and discrepancies in his testimony, or between the testimony of different witnesses, contradictory testimony, his interest in the outcome of the case, his relationship to the litigants, and many other factors hearing upon the truthfulness or untruthfulness of the witness' testimony.

*Young Ah Chor v. Dulles*, 270 F.2d 338, 341 (9th Cir. 1959).

The Supreme Court has recognized that, as a practical matter, "the judge's assessment of the motives of the officers may occasionally influence his judgment regarding *the credibility of the officers' claims* with respect to what information was or was not available to them at the time of the incident in question." *Scott*, 436 U.S. at 139 n.13 (emphasis added). Accordingly, although Fourth Amendment inquiries are inoculated from an officer's subjective motive, determinations regarding that officer's credibility are not.

Judge Ferenbach concluded that Officer Beckley lacked credibility and, as a result, the government failed to meet its burden to show she had reasonable suspicion to stop defendant. (ECF No. 50 at 5). The government argues that Officer Beckley's credibility is not undermined by (1) her subjective intent and motivations in stopping defendant, (2) the "perceived testimonial inconsistencies" in her testimony, (3) her alternative references to jaywalking and pedestrian in the roadway, or (4) the omissions in her police report. (*See generally* ECF No. 51). The government further contends that the underlying motion to suppress should be denied because Officer Beckley "was justified in conducting a 'person stop'" or, in the alternative, had reasonable suspicion to initiate the stop. *Id.* at 8–9.

**James C. Mahan**
**U.S. District Judge**

- 5 -

The court finds that the record supports Judge Ferenbach's credibility determination, and the court comes to the same conclusion. Accordingly, no further evidentiary hearing is necessary.[2] Judge Ferenbach's decision rested on the "inconsistencies during [Officer Beckley's] testimony and in her written report regarding where and how the alleged offense took place and her admitted motivation 'to try and make a stop on [defendant].'" (ECF No. 50 at 6 (quoting ECF No. 43 at 69)).

When evaluating Officer Beckley's credibility, the court considers the inconsistencies, omissions, and discrepancies in her report and testimony. *Young Ah Chor*, 270 F.2d at 341. Officer Beckley's police report omitted information that she relied on to establish reasonable suspicion while testifying. *See, e.g., id.* at 37, 72, 81–83. The government argues that the omission of details in Officer Beckley's report was de minimis. (ECF No. 51 at 7). The court disagrees.

Taken together, the omissions and inconsistencies in and between Officer Beckley's report and testimony lead the court to conclude that "the basis for [d]efendant's stop was not to enforce statutes regarding pedestrians in the roadway—Officer Beckley's purpose was to stop and search [d]efendant based on his criminal history." (ECF No. 50 at 4). Officer Beckley testified to her ability to recognize defendant by sight, but her police report states only that she "observed a black male adult wearing a black backpack walking southbound on Las Vegas Boulevard . . ." and that "[t]he male was identified as Tellis, Demetrick." (*Compare* ECF No. 43 at 70 *with* ECF No. 41 at 8, Defense Exhibit M). Similarly, Officer Beckley testified to another person walking with defendant, who must have also stepped off the sidewalk at some point, but never mentioned that person in her report. (*Compare* ECF No. 43 at 26, 37 *with* ECF No. 41 at 8–9, Defense Exhibit M).

---

[2] The court has enough information to come to this conclusion based on the evidentiary hearing transcript, the parties' briefs, Judge Ferenbach's R&R, the government's objection, and defendant's response. Because the court's conclusion is consistent with the R&R's determination of credibility, a de novo evidentiary hearing—as requested in the government's proposed reply—is unnecessary. Thus, the government's motion for leave to file a reply will be denied as moot.

**James C. Mahan**
**U.S. District Judge**

- 6 -

More importantly, Officer Beckley did not definitively establish whether she suspected defendant of jaywalking or being a pedestrian in the roadway. (ECF No. 43 at 24–25, 52–53). Officer Beckley's report did not include where she saw defendant step into the roadway. (ECF No. 43 at 37). Her testimony suggests that the first place she saw defendant step off the sidewalk was either into or next to an apartment complex's driveway where there was no sidewalk. *Id.* at 22–23, 45, 66. It is unclear—and Officer Beckley never definitively established, in either her testimony or her report—whether the defendant's supposed jaywalking or entry into the roadway was the result of crossing the driveway. *Id.* at 24–25, 52–53. If defendant stepped off the sidewalk and into the driveway, his conduct would be legal, and Officer Beckley's actions could not have been supported by reasonable suspicion.[3]

The court further considers Officer Beckley's potential bias, motive, or interest in the outcome of the case. *Young Ah Chor*, 270 F.2d at 341. Officer Beckley herself admitted that she turned around on Las Vegas Boulevard with the express intent "to try and make a stop on [defendant]." (ECF No. 43 at 69). In fact, Officer Beckley admitted that Las Vegas Metropolitan police officers know the defendant because of his criminal history and, for that reason, she "would conduct surveillance on him" whenever she saw him because she thought "[t]hat he could possibly be armed or going to commit a crime." *Id.* at 71–73. Thus, Officer Beckley resolved to follow and "make a stop" on defendant well before she witnessed anything that gave rise to reasonable suspicion.

In light of the foregoing discrepancies and Officer Beckley's predetermined resolution to survey and stop defendant, the court finds that Officer Beckley's testimony lacked credibility and could not be the basis for reasonable suspicion justifying the stop.

The government alternatively contends that Officer Beckley was justified in conducting a "person stop" or a simple "knock and talk." (ECF No. 51 at 8–9). The government argues that Officer Beckley "could have approached [defendant] and asked to talk with him" and

---

[3] As Judge Ferenbach correctly indicated, NRS 484B.297(2) allows pedestrians to walk along the roadway where there is no sidewalk. (ECF No. 50 at 6).

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  "[defendant] would not have been obliged to answer, and likewise answers could not be compelled, and refusal to answer would not be a basis for arrest." *Id.*

However, Officer Beckley's testimony on the stand is inconsistent with the government's characterization of a person stop. Contrary to the government's argument, Officer Beckley testified that a person stop is "[w]hen you activate your lights and sirens and call the individual over to your vehicle *and do a—a cite or an arrest for the offense.*" (ECF No. 43 at 29 (emphasis added)). Officer Beckley attempted to conduct a stop based on defendant's alleged violation of NRS § 484B.297. *Id.* at 27–28; (ECF No. 41 at 8, Defense Exhibit M ("I then conducted a person stop on the male in front of the Sinclair Gas Station . . . *due to him violating NRS 484B.297.*" (emphasis added)). To that end, Officer Beckley "activated [her] vehicle's lights and sirens, and [she] got out of the vehicle and said, 'Metro Police. Come over to my car.'" *Id.* at 27.

Thus, Officer Beckley's alleged person stop was investigatory and nonconsensual, and, therefore, must have been supported by reasonable suspicion. It was the government's burden to provide evidence demonstrating a reasonable suspicion that defendant had committed an offense prior to being stopped. The government's only evidence supporting reasonable suspicion was Officer Beckley's testimony. As discussed above, Officer Beckley's testimony lacks credibility, which precludes the court from finding that the government met its burden.

The court agrees with Judge Ferenbach: Officer Beckley lacked reasonable suspicion to stop defendant and, by doing so anyway, violated his Fourth Amendment rights. Accordingly, the motion to suppress shall be granted.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Judge Ferenbach's R&R (ECF No. 50) be, and the same hereby is, ADOPTED.

IT IS FURTHER ORDERED that defendant's motion to suppress (ECF No. 26) be, and the same hereby is, GRANTED.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

IT IS FURTHER ORDERED that the government's pending motion for leave to file a reply (ECF No. 53) be, and the same hereby are, DENIED as moot.

DATED August 14, 2019.

_____
UNITED STATES DISTRICT JUDGE